**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| AUC SCHOOL OF MEDICINE B.V., D/B/A, AMERICAN UNIVERSITY OF THE CARRIBEAN SCHOOL OF MEDICINE, a St. Maarten limited liability company,<br><br>          Plaintiff,<br><br>     v.<br><br>AMERICAN UNIVERSITY OF THE CARIBBEAN ALUMNI ASSOCIATION, INC., d/b/a AUC ALUMNI ASSOCIATION, a Florida corporation; and ELMER KROPP, an individual.<br><br>          Defendants. | Civil Action No.<br><br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff AUC School of Medicine B.V., doing business as, American University of the

Caribbean School of Medicine ("AUC" or "Plaintiff"), by and through its attorneys, brings this

Complaint against Defendants American University of the Caribbean Alumni Association, Inc.,

d/b/a AUC Alumni Association, ("AUCAA"), and Elmer Kropp, M.D. ("Kropp"), (collectively,

"Defendants"), and alleges as follows:

**NATURE OF THE ACTION**

1.      AUC brings this action for: (1) injunctive relief, damages and other available

remedies for trademark infringement and false designation of origin and association under

§ 43(a) of the Lanham Act (15 U.S.C. §§ 1114, 1125(a)); (2) injunctive relief, statutory damages,

and other available remedies for each illegally registered domain name, actual damages, and

punitive damages for illegal cybersquatting in violation of the Anti-Cybersquatting Consumer

Protection Act (15 U.S.C. § 1125(d)); and (3) injunctive relief, damages, punitive damages, and

other available remedies for violation of the Illinois Uniform Deceptive Trade Practices Act (815

ILCS 510), and the common law of the State of Illinois.

2.     This action is necessary to stop Defendants from continuing their infringing use of AUC's well-known AMERICAN UNIVERSITY OF THE CARIBBEAN trademarks, cybersquatting on AUC's domain name, and from misleading consumers and potential donors into believing that Defendants are sponsored by, affiliated or associated with, AUC.

**PARTIES**

3.     Plaintiff AUC is a limited liability company registered in Sint Maarten.  AUC's main campus is at 1 University Drive, Jordan Rd., Cupecoy, St. Maarten.  AUC has an administrative office in Plantation, Florida, but AUC is a wholly-owned subsidiary of Adtalem Global Education Inc., with its principal place of business in Chicago, Illinois, USA.  Essentially all of AUC's business and legal operations are based in Chicago, as well as student financial aid support, enrollment and alumni relations management.

4.     Upon information and belief, Defendant AUCAA is a Florida corporation with its principal place of business at 2807 Washington Rd. 123, Augusta, GA  30909.

5.     Upon information and belief, Defendant Kropp is a resident of Augusta, Georgia.

**JURISDICTION AND VENUE**

6.     This Court has original jurisdiction over the subject matter of the Lanham Act and Anti-Cybersquatting Consumer Protection Act claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338(a) (trademark).  The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. §§ 1367 in that the claims are joined with a substantial and related claim under the Trademark Laws of the United States and are so related to the federal claims that they form part of the same case or controversy and arise from a common nucleus of operative facts.

7.     This Court has specific personal jurisdiction over Defendants because Defendants have purposefully directed their infringing, cybersquatting and tortious conduct to this District.

8.     Defendants have infringed, and are continuing to infringe, AUC's trademarks and have registered a confusingly similar domain name in an effort to profit from AUC's name and

reputation.

9.      Upon information and belief, Defendants solicit donations from Illinois residents through Defendants' infringing website, which is available to residents in this District.

10.     In addition, the General Counsel of Adtalem, Douglas Beck, sent a cease and desist letter to Defendants on behalf of AUC from its principal place of business in this District (Exhibit A), to which Defendants responded via multiple emails.  (See, e.g., Exhibit B.)

11.     Defendants also sent an email to Sandra Thompson of Adtalem on June 9, 2022 demanding that Adtalem and AUC stop using AUC's own "AUC" trademark.  (Exhibit C ("CEASE from all further use of the AUC Trademark…")).

12.     Defendants also filed a trademark application with the U.S. Patent and Trademark Office ("USPTO") for the "AUC Alumni Association" mark (Exhibit D) despite the fact that USPTO records show the AUC Marks are owned by AUC and specify its Illinois address. (See Exhibits E-G.).

13.     Through Defendants' continued infringement, cybersquatting and tortious conduct, as well as their prior communications with AUC related to the claims in this Complaint, Defendants have purposefully directed their conduct to AUC and this State.  As a result of Defendants' wrongful conduct, AUC suffered harm in this District.

14.     At least because AUC's trademark, false designation of origin, cybersquatting and deceptive trade practices claims all arise out of the Defendants' above-described conduct directed to the forum, this Court has specific personal jurisdiction over Defendants.

15.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) at least because a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### *Background of AUC's Rights*

16.     AUC is a well-known, fully accredited medical school that has trained over 7,500 students, many of whom are practicing as physicians throughout the United States, Canada and

internationally.

17.     AUC's medical sciences campus is located in St. Maarten, in the northeast Caribbean, and AUC's principal place of business is in Chicago, Illinois.

18.     AUC owns and has continuously and substantially used, and continues to use, the following trademarks in interstate commerce (collectively, "AUC Marks") in the United States and Worldwide:

| Trademark | Reg./App. No. Reg./App. Date | Classes/Services | Date of First Use in Comm. |
|---|---|---|---|
| AMERICAN UNIVERSITY OF THE CARIBBEAN<br><br>(typed drawing)<br>(Exhibit E) | Reg. No. 1,846,403<br>July 19, 1994 | IC 041  Educational services; namely, providing courses of instruction at the college level in the medical education field | 1992 |
| AMERICAN UNIVERSITY OF THE CARIBBEAN<br><br>(Exhibit F) | Reg. No. 2,618,194<br>Sept. 10, 2002 | IC 041  Educational services, namely, providing courses of instruction at the college level in the medical education field | 1978 |
| AUC<br><br>(Exhibit G) | App. No. 97/520,471<br>July 26, 2022 | IC 041 Medical training and teaching; educational services, namely, conducting courses in the field of medicine, healthcare, and biomedical science; educational services, namely, providing online programs in the field of medicine, healthcare and biomedical science; educational services, namely, conducting courses in the field of undergraduate and post graduate qualifications in medicine, healthcare and biomedical science; educational services, namely, conducting seminars, classes, lectures, tutorials, and presentations in the fields of research, development and commercial exploitation; educational consulting in the field of medicine, healthcare and biomedical science; vocational guidance; | Oct. 29, 2005 |

| | | education services, namely, organizing, arranging and conducting workshops, educational seminars, lectures, tutorials, exhibitions, fairs, symposia, conferences, presentations and conventions in the field of medicine, healthcare, and biomedical science; educational services, namely, provision of residential training courses in the field of medicine, healthcare, and biomedical science; educational services, namely, arranging and conducting distance learning courses at the university level in the field of medicine, healthcare, and biomedical science; educational services, namely, providing online instruction in the field of medicine, healthcare, and biomedical science via an online website. | |
|---|---|---|---|

19.     AUC has registered and common law trademark rights in the AUC Marks for its educational programs and services.

20.     AUC's registrations for the AMERICAN UNIVERSITY OF THE CARIBBEAN marksare incontestable under 15 U.S.C. § 1065.

21.     AUC has been using the AMERICAN UNIVERSITY OF THE CARIBBEAN mark since 1978 and its abbreviation "AUC" since at least 1992.

22.     The images below show several examples of AUC's uses of the AUC Marks in conjunction with its goods and services.







23.     Since founding AUC in 1978, AUC has purposefully and steadily invested substantial time and resources to promote the AUC brand and to grow AUC's recognition as a provider of quality medical education training, programs and services.

24.     AUC's educational services are advertised in a variety of contexts and media, including in print and on the Internet.

25.     AUC has offered and sold its educational services under the AUC Marks all over the World, including throughout the United States and Illinois.

26.     As a result, AUC has acquired substantial goodwill in its AUC Marks.

27.     The AUC Marks are recognized around the World and throughout the United States by consumers as signifying a high quality provider of medical education services.

28.     AUC acquired and registered the domain name for its website, <www.aucmed.edu> ("AUC Website"), in 1997.

29.     The AUC Website domain name incorporates AUC's well-known abbreviated name and AUC trademark, which were distinctive at that time of registration.

30.     AUC uses the abbreviated "AUC" mark extensively on its website, including in its website domain name www.aucmed.edu.

31.     AUC also uses the "AUC" mark with the school's official, authorized alumni association, which AUC refers to as the "AUC Alumni Association."

32.     An example of AUC's use of "AUC Alumni Association" on the AUC Website is shown below.

8



# OFFICE OF ALUMNI RELATIONS

## 7,500 GRADS AND COUNTING



# AUC ALUMNI ASSOCIATION

American University of the Caribbean School of Medicine is proud to have more than 7,500 alumni all over the United States, Canada, and beyond. They are chief residents, department chairs, program directors, researchers, entrepreneurs, and community advocates.

33.     AUC has continuously promoted, marketed and sold its medical training and education programs under the AUC Marks on the AUC Website since at least 1997.

34.     AUC's educational services are promoted and sold under its AUC Marks to customers across the United States and around the World through AUC's Website.

*Defendants' Infringement*

35.     In disregard of AUC's rights in its AUC Marks, and without authorization from AUC, Defendants have promoted themselves and their alleged charitable and educational services ("Defendants' Services") under the "AUC ALUMNI ASSOCIATION" trademark (hereafter, "Infringing Mark").

36.     An example of Defendants' use of the Infringing Mark is shown below:



37.      Defendants' use of the Infringing Mark inevitably implies to consumers and potential donors that AUC has endorsed or authorized Defendants' Services.

38.     AUC has not endorsed or authorized Defendants' Services.

10

39.     Defendants have, and are, also promoting Defendants' Services on their website at the domain <https://aucalumni.org> ("Defendants' Website").  The domain name includes the "AUC" Mark.  The Defendants' Website includes a picture of the AUC main campus on the home page and prominently displays the Infringing Mark.

40.     Defendants solicit money from donors by advertising Defendants' Services under the Infringing Mark on Defendants' Website.

41.     Defendants knew of AUC's use of the AUC Marks, and the AUC Website domain name, prior to registering the domain name for Defendants' Website.

42.     On June 3, 2022, Defendants filed an intent-to-use application for the Infringing Mark with the United States Patent and Trademark Office ("USPTO"), Serial No. 97/441,582, under Class IC 025 to cover goods, namely "shirts."

43.     Defendants' Infringing Mark prominently uses the same "AUC" abbreviation as Plaintiff AUC's abbreviated AUC mark, in connection with charitable and educational services that overlap with goods and services offered by AUC.

44.     The AUC Marks and the Infringing Mark are visually and conceptually similar and create the same or very similar commercial impressions.

45.     Defendants' use of the Infringing Mark and Defendants' Website has caused or will cause a likelihood of confusion among consumers regarding the source of Defendants' Services, and whether AUC has sponsored, licensed, authorized or is otherwise affiliated with the Defendants.

46.     Upon information and belief, Defendants adopted the Infringing Mark and domain name for Defendants' Website in bad faith, in order to confuse donors into believing that Defendant are sponsored, approved, affiliated with, or otherwise associated with Plaintiff and to trade off the goodwill and reputation AUC has built with the AUC Marks.

47.     Upon information and belief, Defendants use the Infringing Mark and Defendants' Website to confuse customers into donating money to Defendants.

48.     Upon information and belief, Defendants solicited donations under the Infringing Mark for an orphanage that is no longer in operation.

49.     AUC began using the AUC Marks well before Defendants began using the Infringing Mark and AUC has established priority of use in the AUC Marks.

50.     Defendants' past and continuing use of the Infringing Mark is without permission or authorization from AUC.

51.     Upon information and belief, Defendants knew about AUC and AUC's use of the AUC Marks before Defendants began marketing and soliciting donations for Defendants' Services under the Infringing Mark on Defendants' Website.

52.     Upon information and belief, Defendants knew about AUC and AUC's use of its AUC Marks before Defendants registered the domain name for Defendants' Website.

53.     Defendants knew about AUC and AUC's use of the AUC Marks before Defendants filed their trademark application for the Infringing Mark with the USPTO.

54.     On June 10, 2022, AUC sent Defendants a cease and desist letter demanding that Defendant stop using the Infringing Mark.  A copy of the letter is attached hereto as **Exhibit A**.

55.     Defendants refused to stop using the Infringing Mark and have continued to use and market Defendants' Services under the Infringing Mark, leaving no doubt that Defendants' infringement is willful.

56.     Defendants' actions have caused, and will continue to cause, AUC irreparable harm for which money damages and other remedies are inadequate.  Unless Defendants are restrained by this Court, Defendants will continue to deceive potential donors into believing that AUC sponsors, approves, or is associated with, Defendants.

57.     On information and belief, Elmer Kropp willfully and deliberately participated in the foregoing and other acts of infringement, and authorized Defendants' use of the Infringing Marks.

58.     For example, Elmer Kropp signed the application for trademark for AUC

12

ALUMNI ASSOCIATION. (Exhibit D).

59.     The AUC ALUMNI ASSOCIATION trademark application lists Elmer Kropp as the owner of the mark.

60.

61.     Each Defendant is jointly and severally liable for the acts of infringement and damages set forth herein.

## COUNT I

### Trademark Infringement – 15 U.S.C. § 1114

62.     The allegations of the preceding paragraphs are repeated and re-alleged as if fully set forth herein.

63.     Defendants have used, and continue to use, in connection with the sale, offering for sale, distribution, or advertising of Defendants' Services bearing the Infringing Mark, words and symbols that infringe upon Plaintiff AUC's registered AUC Marks.

64.     Defendants' acts of infringement have been committed with the intent to cause confusion, mistake, or deception, and are in violation of 15 U.S.C. § 1114.

65.     Defendants have willfully infringed Plaintiff's AUC Marks in an effort to trade off AUC's goodwill and reputation, and as evidenced by the fact that Defendants persisted in their infringing acts even after receiving AUC's cease and desist letter.

66.     As a direct and proximate cause of Defendants' infringing conduct, AUC is entitled to recover up to treble the amount of Defendants' unlawful profits, AUC's damages and an award of attorneys' fees under 15 U.S.C. § 1117(a).

67.     AUC is entitled to injunctive relief pursuant to 15 U.S.C. § 1116 that requires Defendants to stop using the Infringing Mark, and any other mark or design that is confusingly similar to the AUC Marks.

## COUNT II

### False Designation of Origin/Association – 15 U.S.C. § 1125(a)(1)(A)

68.     The allegations of the preceding paragraphs are repeated and re-alleged as if fully set forth herein.

69.     Defendants have used, and continue to use, their Infringing Mark in interstate commerce in connection with their marketing and sale of Defendants' Services.

70.     AUC's use of the AUC Marks predates Defendants' use of their Infringing Mark.

71.     Defendants' use of the Infringing Mark in commerce is likely to cause confusion, mistake or to deceive customers and potential donors as to Defendants' affiliation, connection, or association with AUC.  Defendants' use the Infringing Mark is likely to confuse customers into believing AUC approves of, or sponsors, Defendants' Services.  Defendants' actions therefore constitute infringement and a false designation of origin or association in violation of § 43(a) of the Lanham Trademark Act, 15 U.S.C. § 1125(a)(1)(A).

72.     Defendants' acts are willful and deliberate and made with an intent to reap the benefit of AUC's name, goodwill and reputation.

73.     By reason of Defendants' acts of false designation and association as alleged above, AUC has suffered, and will continue to suffer, substantial damage to its business reputation and goodwill.

74.     As a direct and proximate result of Defendants' conduct, AUC is entitled to recover up to treble the amount of Defendants' unlawful profits and AUC's damages, and an award of attorneys' fees under 15 U.S.C. § 1117(a).

75.     The Infringing Mark is identical with, or substantially indistinguishable from Plaintiff's AUC Marks entitling Plaintiff to statutory damages under 15 U.S.C. § 1117(c).

76.     Defendants' use of the counterfeit Infringing Marks was willful entitling Plaintiff to enhanced statutory damages.

77.     Defendants' acts of false designation of origin and association as alleged above

14

have caused AUC irreparable injury, and Defendants threaten to continue to commit such acts, and unless restrained and enjoined, will continue to do so.  AUC's remedy at law is not adequate to compensate it for injuries inflicted and threatened by Defendants.  AUC is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116 that requires Defendants to stop use of the Infringing Mark, and any other mark or design similar to the AUC Marks.

## COUNT III

### Cybersquatting – Anti-Cybersquatting Consumer Protection Act – 15 U.S.C. § 1125(d), *et seq.*

78.     The allegations of the preceding paragraphs are repeated and re-alleged as if fully set forth herein.

79.     Defendants have registered a domain name that is confusingly similar to AUC's website domain, distinctive name and AUC Marks, which were and are owned by AUC.  The domain name Defendants registered for Defendants' Website prominently includes AUC's name and the entirety of AUC's abbreviated "AUC" mark.

80.     Defendants registered and used the domain name for Defendants' Website in bad faith and with the intent to profit from AUC's name and AUC Marks and to deceive consumers into believing that AUC sponsors, approves of, or is affiliated with Defendants.

81.     Defendants did so with the intent to create customer confusion as to the source, sponsorship, affiliation, or endorsement of Defendants' Website by AUC.

82.     Defendants' conduct harmed and continues to harm the goodwill of AUC's name and AUC Marks.

83.     Upon information and belief, Defendants did not believe and had no reasonable grounds to believe that use of the domain name for Defendants' Website was fair use or was otherwise lawful.

84.     Defendants' unlawful acts have directly and proximately caused AUC harm, and will continue to do so, unless Defendants' registration of the URL for Defendants' Website is

15

forfeited, cancelled or transferred to AUC.

**COUNT IV**

**Violation of the Illinois Deceptive Trade Practices Act (815 ILCS 510)**

85.     The allegations of the preceding paragraphs are repeated and re-alleged as if fully set forth herein.

86.     Defendants' unlawful conduct as detailed above in the promotion of Defendants' Services is causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of Defendants and Defendants' Services, and as to Defendants' affiliation, connection or association with AUC.

87.     Defendants use the Infringing Mark to enhance the commercial value of Defendants' Services with the public.

88.     Defendants' unauthorized, intentional and willful use of the Infringing Mark to promote, market, offer for sale and sell Defendants' Website and Defendants' Services constitutes deceptive trade practices in violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2, *et seq*. in that Defendants' use of the Infringing Mark, Defendants' Website domain, which contains genuine images of AUC's campus, confuse consumers regarding the source of, sponsorship or affiliation of Defendants' Services.

89.     Defendants' use of the Infringing Mark has proximately caused and will continue to cause substantial injury to consumers, donors, the general public and to AUC.  AUC is therefore entitled to injunctive relief and to recover damages and punitive damages, costs and reasonable attorneys' fees.

**COUNT V**

**Common Law Infringement and Unfair Competition**

90.     The allegations of the preceding paragraphs are repeated and re-alleged as if fully set forth herein.

91.     AUC owns valid and protectable rights in the AUC Marks at common law.

16

92.     Defendants' conduct is likely to cause confusion, mistake, or to deceive as to the source of Defendants' Services, or as to affiliation, connection, association, sponsorship, or approval of such services, and constitutes infringement of AUC's AUC Marks at common law.

93.     Defendants infringed Plaintiff's AUC Marks with knowledge and intent to cause confusion, mistake or deception.

94.     As a direct and proximate result of Defendants' unlawful conduct, AUC has suffered substantial damage.

95.     Unless restrained and enjoined, the conduct of Defendants will further damage the goodwill and reputation of AUC and the value of the AUC Marks. AUC has no adequate remedy at law.

96.     AUC is entitled to monetary damages and injunctive relief prohibiting Defendants from using the Infringing Mark, Defendants' Website domain and any other mark similar to the AUC Marks.

97.     Without injunctive relief, AUC has no means to limit the continuing injury to AUC's reputation and goodwill or that of the AUC Marks. AUC will be irreparably harmed and no amount of damages will adequately compensate AUC if it loses the ability to control its AUC Marks.

98.     Because Defendants' actions have been committed willfully, maliciously and intentionally, AUC is entitled to recover reasonable attorneys' fees and compensatory and punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, AUC respectfully requests this Court to enter the following relief:

1.     Enter judgment that Defendants have:

   a.   Willfully infringed, and are still infringing, AUC's registered trademarks in violation of 15 U.S.C. § 1114;

   b.   Committed, and are still committing, false designation of origin and

17

association against AUC under 15 U.S.C. § 1125(a);

    c.   Engaged in cybersquatting in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d);

    d.   Engaged in unlawful trade practices in violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510;

    e.   Willfully infringed, and are still infringing, AUC's common law trademark rights and engaged in unfair competition; and

    f.   Otherwise injured the business reputation and business of AUC by their acts and conduct set forth in the Complaint;

2.    Issue an injunction against Defendants, their officers, agents, representatives, employees, attorneys, successors and assigns, and all others acting in concert or participation with Defendants, permanently enjoining them from:

    a.   Using the Infringing Mark, using any word, term, name, symbol, device, or combination that causes or is likely to cause confusion, mistake, or deception as to the origin, sponsorship, affiliation or association of Defendants with AUC or its Registered Marks;

    b.   Any further false designation of origin, false or misleading description or representation of fact;

    c.   Further damaging AUC's goodwill or business reputation;

    d.   Doing or causing to be done any further acts of unfair and deceptive trade practices in violation of FDUTPA; and

    e.   Continuing to perform in any manner whatsoever any of the other acts complained of in this Complaint;

3.    Direct that Defendants cancel, abandon, transfer to AUC, or otherwise forfeit their federal trademark application(s) for the Infringing Mark(s);

4.    Order Defendants—jointly and severally—to pay AUC damages as follows:

    a.  AUC's damages, and Defendants' profits or, as Plaintiff may elect at any time before final judgment is rendered by the trial court, statutory damages;

    b.  Treble or punitive damages, in an amount to be determined by the Court, for Defendants' malicious, willful, intentional, deliberate and tortious conduct;

    c.  Statutory damages of up to $100,000 per domain name for Defendants' willful violation of the Anti-Cybersquatting Consumer Protection Act, as well as forfeiture, cancellation, or transfer of the URL for Defendants' Website improperly registered by Defendants;

    d.  Such other damages as the Court deems just and proper; and

    e.  Interest, including prejudgment interest, on the foregoing sums.

5.      Order Defendants to pay AUC both the costs of this action and its reasonable attorneys' fees;

6.      Award AUC such further relief as this Court deems just and proper.

## **JURY DEMAND**

In accordance with the Federal Rules of Civil Procedure 38, AUC respectfully demands a trial by jury on all issues so triable.

Date:  February 9, 2023        Respectfully Submitted,

                    ARONBERG GOLDGEHN DAVIS & GARMISA

                    By:  */s/ Matthew De Preter*
                    Matthew De Preter
                    330 N. Wabash Ave. Suite 1700
                    Chicago, IL 60611
                    (p) 312.828.9600, (f) 312.828.9635
                    cdepreter@agdglaw.com

Lena N. Bacani (will apply *pro hac vice*)
Email: lena.bacani@lozaip.com
Christina Loza (will apply *pro hac vice*)
Email: tina@lozaip.com
Loza & Loza LLP
305 N. Second Ave., #127
Upland, CA 91786
Tel: (877) 406-5164

Attorneys for Plaintiff AUC School of Medicine B.V.,
d/b/a American University of the Caribbean School of
Medicine